MONROE, J.
The defendant appeals from a verdict and judgment expropriating a right of way for the plaintiff’s poles and wires on the east side of its (the defendant’s) right of way from the Sabine river to Shreveport, and thence to the Arkansas line, and from De Quincy to Lake Charles — a total distance of 248 miles — and assessing the right thus expropriated at $10 a mile.
*893 The propositions relied on for the reversal ■or amendment of the judgment appealed from will be considered seriatim.
1. That the plaintiff has no right to expropriate the property in question, because the law under which it proceeds (Act No. 124, p. 1G8, of 1880, and section 5 of Act No. 125, p. 170, of 18S0)' authorizes the construction and maintenance of telephone lines “along and parallel to any railroads in the •state,” but not upon such roads. The answer to this is that the plaintiff does not propose to establish its poles and wires upon the defendant’s railroad, but, as the judgment reads, “along on the east side of the railroad, within three feet of the outside of the right of way.”
2. That the plaintiff’s poles and wires should be established upon the west, and not upon the east, side of its (defendant’s) track, as likely thereby to occasion less inconvenience.
It appears from the evidence that the wires of a telegraph company are already strung on the western side of defendant’s track, and the judgment, as rendered, requires that the plaintiff's poles and wires shall be so erected and maintained upon the east side “as not to interfere in any manner with the conduct, traffic, and management of said railroad.” The difference, in the matter of convenience or inconvenience, to the defendant, as the telephone line is established upon the one side or the other of its track, seems to us to be rather hypothetical than real. Should the situation so change as 'to make the plaintiff’s line, as located by the judgment appealed from, an actual obstruction to the defendant in the use of its property and the discharge of its functions, the courts will, no doubt, afford such relief as the occasion may require.
3. That the amount allowed is insufficient. Upon the former trial the jury awarded $5 a mile. The verdict and judgment appealed from allow $10. The evidence is conflicting; some of the witnesses testifying that the right expropriated is not worth more than $2.50, and others fixing it at $3,000, a mile.
The land, for the most part, without the timber, is worth little or nothing — say, 50 cents an acre. The cost of clearing it was from $30 to $35 an acre. The cross-arms on the plaintiff’s poles are to be 6 feet long, so that its line will occupy a strip 6 feet wide on the eastern edge of the right of way; being about 1% miles to the acre. If, therefore, to the value of the land we add the average original cost of clearing, and charge the plaintiff for the proportion to be occupied by it, the amount to be paid would be $23.45 per mile. It is to be remembered, however, that the plaintiff does not acquire an absolute title to the property. It merely gets a right of way and of use, in the exercise of which it is not to interfere with the defendant’s use of the same property. Thus, whilst the cross-arms on its poles are to be 6 feet long, its poles, at intervals of 200 feet, are to occupy spaces only 5 or 6 inches square, and between the poles and under the cross-arms and the wires the defendant may excavate and operate at will. More than this, the plaintiff, by being placed upon the edgp of the right of way, derives but a partial advantage from the clearing, and must protect itself from the adjacent timber. It also appears that the obligation will rest upon the plaintiff, for its own protection, to keep its right of way clear of undergrowth. Under these circumstances, we are not prepared to say that the amount allowed is insufficient.
The judgment appealed from is therefore affirmed.